STATE OF MAINE *vs.* ALVAH H. TOWLE.

Penobscot.    Opinion March 13, 1888.

*Contracts in restraint of marriage, void.    Marriage.    Insurance.*

A written agreement between an association and its members, which provides that, if a member pays an initiation fee, and certain annual dues for nine years and until he is married, and also an assessment on the marriage of any associate, and promises on pain of forfeiture of all rights under the contract that he will not get married for two years, the company will pay one thousand dollars to his wife, the amount to be collected by an assessment upon the associates, if not already in the treasury, is not a contract of insurance, but a contract in restraint of marriage, unlawful and void.

The insurance commissioner has no jurisdiction in such business.

ON report.

The opinion states the case and material facts.

*F. H. Appleton and Hugh R. Chaplin*, for plaintiff.

In *White* v. *The Equitable Nuptial Benefit Union*, 7 Ala. 251, S. C. 52 Am. Rep. 325, the court declare that such a contract, with the condition that the party is not to get married in three months is a contract in restraint of marriage and illegal and void. In *Chalfant* v. *Payton*, 96 Ind. 202, S. C. 46 Am. Rep. 586, a certificate of membership issued by such company was held to be contrary to public policy, and illegal, the contract being to pay a sum of money on condition that the member did not marry in two years. See also *Hartley* v. *Rice*, 10 East. 22.

Insurance (comprehending all kinds) may be defined to be where one person called the insured member, &c., pays a small sum of money called the premium, assessment, fee, &c., to another person or body corporate called the insurer, in consideration of said insurer incurring the risk of paying a larger sum upon a given contingency. See *Paterson* v. *Powell*, 9 Bing. 320. 4 Geo. 3, c. 48, enacts, "that no insurance shall be made by any person or persons, bodies politic or corporate, on the life or lives of any other person or persons, or on any event or events whatsoever, wherein the person or persons for whose use, benefit, or on whose account such policies shall be made, shall have no interest, or by way of gaming or wagering."

The first case decided under the statute was *Roebuck et al.* v. *Hammerton*, Cowper, 737. See *Good* v. *Elliot*, 3 T. R. 693.

It may be contended that the scheme here involved does not fall within the common and accepted definition of insurance, for instance, that given by Judge MAY, as follows : "Insurance is a contract, whereby one, for a consideration, undertakes to compensate another, if he shall suffer loss." Again Judge MAY says, section 2, "Wherever danger is apprehended or protection required, it (insurance) holds out its fostering hand and promises indemnity."

*M. Laughlin*, for the defendant, cited : 6 Gray, 396 ; *Godsall* v. *Bolders*, 2 Smith Lead. Cas. *292 ; May, Insurance, 1 ; Bouvier's L. Dict. *Insurance* : Rapalje & L. Dict. *Insurance* ; 105 Mass. 160.

PETERS, C. J. The state sues to recover a penalty of the defendant for acting as a soliciting agent for the Single Men's Endowment Association, a company having its home in the state of Minnesota, and doing business in this state without a license from the insurance commissioner. The question is whether or not this association is an insurance company, under the provisions of the R. S., c. 49 § 73.

The contract between the company and its patrons declares the duties which must be assumed by the single man who becomes privileged to an endowment in the association. He pays ten

dollars as an initiation fee ; two dollars as annual dues each year for nine years, and as much longer as he remains single ; one dollar and a quarter on the marriage of any associate ; and he promises on the pain of forfeiture of all rights accruing to him, that he will not himself marry within two years from the date of his admission to the association. For the performance by him of these undertakings, the company promises to pay to his wife, if married to him after the expiration of the two years, the sum of as many dollars as there are associates in the order, not exceeding one thousand dollars, provided that there be that amount of money in the treasury at the time, or it can be collected by an assessment upon the associates. No word is spoken of insurance. That it is a wagering or gambling contract, and void upon grounds of public policy, because in restraint of marriage, there is no room for doubt. The same or a similar contract has been held to be void in *White* v. *Equitable Nuptial Benefit Union*, 7 Ala. 251; and in *Chalfant* v. *Payton*, 96 Ind. 202.

The counsel for both parties agree that the contract, for one reason or another, is illegal, but the counsel for the state contends that, whether the contract be legal or illegal, it is a contract of insurance, and that, as such, it falls under the supervision of the commissioner.

It is not to be conceded, we think, that this contract, in the sense of any modern use of the term, is an insurance policy. No loss or casualty or peril is named for which any indemnity is promised. It is more of a betting contract on a future event. It is true that there was formerly a class of betting contracts styled insurances, and that a narrow line once existed between gambling and betting contracts and those then denominated contracts of insurance. And the case of *Patterson* v. *Powell*, 9 Bing. 320, relied on by the state, shows how far a court was induced to go to determine that a contract, similar in principle to the present, was an insurance policy, in order to declare it void. The statute, 4 Geo. 3, c. 48, rendered certain speculative insurance contracts void, and, strange to say, allowed all

contracts founded on mere bettings and gamblings to be valid. At this day, the contract in that case, with all its imitations of the thing, would hardly receive the appellation of an insurance policy.

It does not seem probable that the legislature intended to commit to the care of the commissioner the business of illegal or illegitmate insurance companies. It would be tolerating instead of condemning them. He has the power to issue and suspend licenses. But there must be cause for either act. R. S., c. 49, § § 73, 75. His business is to deal with such companies as can, when licensed, issue legal policies. His act cannot confer legality upon companies doing illegal business. The state seeks to recover a penalty of fifty dollars, because the defendant acted without an official license, while the policy, if to be called such, issued by him, would be unlawful and void, whether he was acting with or without a license. It would be inconsistent to collect a penalty of an agent for not doing business under a void license.                      *Plaintiff nonsuit.*

DANFORTH, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.